1820.

GOUVERNEUR
v.
ELMENDORF.

Motion denied.

————

GOUVERNEUR and others *against* L. ELMENDORF, impleaded with others.

A *cross bill* must be filed *before* publication passed in the original cause.

It is not a matter of course to stay proceedings, or enlarge publication, in the original cause, until an answer is put in to a cross bill filed after proceeding, or answer, in the original cause; but it depends on special circumstances.

When there has been very great delay and negligence on the part of the defendant, he will not be allowed to file a cross bill, nor amend his answer, nor to file a supplemental answer, nor to issue a commission, so as to delay the plaintiff.

THE plaintiffs filed a bill, in 1810, to foreclose a mortgage executed by the defendant to them.

The defendant put in his answer, on the 12th of *November*, 1810, in which he admitted the execution and forfeiture of the mortgage, and that he had paid only 360 dollars towards interest, in the spring of 1805. He stated, that the consideration of the mortgage was a deed from the plaintiffs to him, of the date of the 13th of *May*, 1804, in which, as executors of *Nicholas Gouverneur*, deceased, they conveyed to him, for the consideration of 8,000 dollars, "*land office treasury warrants of Virginia, dated 15th of October*, 1779, *for*

*March 1st.*

*lands*, &c., and that they were issued in the name of *Samuel Beall*, who placed them in the hands of *John May*, to be located and surveyed for *Robert S. Biends*, and they were sold, subject to the reservations contained in the warrants, &c., and subject to the claims of *John May*, and *Humphrey Marshall*, by reason of agencies, in respect to the same, so as such claims did not exceed, in quantity or value, one fourth of the lands. The grantors in the deed agreed, for the heirs of their testator, that the defendant might hold and possess the premises, without the interruption or denial of the said *Biends*, or his heirs, and that the heirs of *N. G.* would warrant the land against the heirs and assigns of *Samuel Beall*, and *Robert S. Biends.*" This was the substance of the deed referred to in the answer. The defendant further stated, that he paid 3,000 dollars when he took the deed, and gave a bond, and the mortgage in question, for the residue ; that he went to *Kentucky*, in 1803, after the contract was made, and discovered that the land warrants had been, in part, located on 10,812 acres, and that the legal estate was in the heirs of *J.* and *N. Gouverneur*, and that the residue of the land warrants were located on lands of which the legal estate was in the heirs of *Samuel Beall*, and the heirs of the testator had only an equitable interest, if any. That all the lands, aforesaid, were adversely possessed, and entangled with interfering claims and locations. In this answer, the defendant prayed for two years, at least, to discharge the mortgage, on paying the interest annually.

In an affidavit made by the defendant, on the 1st of *May*, 1811, and presented to the Court, he stated, that the lands so conveyed to him, amounted to 19,350 acres, and that he had applied to this Court for a commission to examine witnesses in *Kentucky*, and failed in his motion, because no notice of it was given to the opposite solicitor. That such a commission was necessary for him, to show, that the plaintiffs were not seised of such an interest as they undertook to

convey in the lands, inasmuch as they owned only a moiety of the 10,512 acres, and the legal estate in the residue, or 8,500 acres, was in the heirs of *Beall.*

That from this time the plaintiffs rested in the suit, from indulgence to the defendant, until 1818, when they gave him notice that they should proceed.

A decree was taken by default, in *September*, 1818, and a reference made. In *November*, 1818, an order of sale was entered. The defendant drew a cross bill in the autumn of 1818, but never filed it; and on the 3d of *November*, 1818, he went to *Kentucky*, and was absent for a year.

On an application of the defendant's solicitor, on the 9th of *December*, 1811, to set aside the rule for publication, of *September* preceding, and the subsequent proceedings, the proceedings were stayed, and leave given to the defendant to apply, for the purposes aforesaid, at *January* term, 1819. No application was made, nor any further step taken on the part of the defendant.

On the 17th of *September*, 1818, the plaintiff voluntarily vacated the order of *September*, 1818, for passing publication, and entered another rule, that the defendant show cause, in three weeks, why publication should not pass. On the 4th of *October*, 1819, on application on behalf of the defendant, the time for publication was enlarged to the 22d of *November*, 1819, and on the 23d of *November*, the rule for publication passed, and the cause was noticed for final hearing in *January* term, 1820.

The above is a brief account of the proceedings in the cause. The affidavits of two of the plaintiffs, and of the solicitor for the plaintiffs, went to deny several of the allegations of merits, and of excuse for the delay set up on the part of the defendant. A letter, also, from the defendant, to one of the plaintiffs, dated *January* 3d, 1807, was produced, in which the defendant speaks " of the claims which he has been so unfortunate as to take from off the shoulders of the plaintiffs. That he meant to have paid

before, and had done his utmost, but had not been able to raise the money. That he had not as yet realized a cent of property from the claims, and nothing to assure him of better prospects, so that out of that fund he had nothing. That he had heavy law suits to carry on during the preceding summer, the expense of which had prevented him from doing any thing effectually with the plaintiffs. That the law suits had all been settled, and he expected reimbursements that winter, out of which he would pay as much as possible. That he hoped the plaintiffs would be content with receiving interest, until he could effect a sale of some real property. That he had already made one journey to *Kentucky*, and thought it would not be much of a favour for the executors to wait for the principal of their demand, until he was able to dispose of property, to discharge it."

The defendant gave notice of a motion for *January* term, 1820, founded upon his *petition*, detailing the proceedings in the cause, for a rule to set aside all the proceedings subsequent to the joining of issue in the cause; and, also, for leave to amend his answer, or to file a cross bill against the plaintiffs and others; and that the proceedings on the part of the plaintiffs be stayed, until such cross bill shall have been answered.

*The Defendant*, in *propria persona*, in support of the motion.

*W. A. Duer*, for the plaintiffs.

THE CHANCELLOR. The defendant is clearly too late to stay the proceedings by a cross bill. A cross bill must be filed *before* publication is passed in the original cause. This has been understood and declared to be the invariable rule on the subject of a cross bill. (*Sterry* v. *Arden*, 1 *Johns. Ch. Rep.* 62.) The practice, as stated by Lord *Hardwicke*, was not to stay proceedings, but only to stay or

enlarge *publication* in the first cause, until the answer to the
cross bill came in; and he said it was never of course,
but depended upon special circumstances, whether publica-
tion should be enlarged on filing a cross bill, if filed *after*
*the original cause was proceeded in.* (1 *Atk.* 21. 291. 2
*Ves.* 336.) It is, therefore, most manifest that the cross
.bill must be filed *before* publication in the original cause.
In *Cook* v. *Broomhead.* (16 *Ves.* 133.) a cross bill was filed
*after* the rules for passing publication had issued in the ori-
ginal cause, and a motion that publication in the original
cause, be enlarged, until a fortnight after answer to the
cross bill, was refused, with costs, as being against the prac-
tice.    A motion to enlarge publication, until answer to a
cross bill, filed after the answer to the original bill, was, also,
denied in *Dalton* v. *Carr*, (16 *Ves.* 93.)

This case presents a series of acts of indulgence on the
part of the plaintiffs, and of gross and obstinate delays on
the part of the defendant, that are extremely rare ; and to
allow the cause to be delayed any longer, by a commission,
or by a cross bill, would be doing great injustice to the
suitor, and a very serious injury to the practice of the Court.
The defendant knew that a commission was wanted, in 1811,
for he had then already applied for one.    He had then visit-
ed *Kentucky*, and discovered all the difficulties and embar-
rassments attending the title under the land warrants, which
he had purchased.    Why was not this commission sued out
in due season ?  The plaintiffs, and their solicitor, deny every
charge that the delay was justly imputable to them.    And it
is worthy of notice, that though the defendant, as he admits
in his answer, went to the state of *Kentucky*, in 1803, and
discovered the impediments of which he complains; yet in
his last letter of 1807, he sets up no such excuse for non-pay-
ment of the mortgage debt.    Unfortunate as he states his
speculation to have been, he, nevertheless, seems to admit
his obligation to pay, and promises to use his efforts to
do it.

There is no just pretence to question the regularity of the proceedings, on the part of the plaintiffs, or to stay the suit until the defendant can sue out and execute a commission in *Kentucky*, or file a cross bill, and compel answers to it. He has lost the opportunity to annex such a condition to either of those measures, by his inexcusable *laches*. The most that can be granted is to allow a commission to go at the peril of the defendant, and without delay to the plaintiffs. Nor is there any sufficient ground disclosed for allowing the answer to be amended, or, according to the more modern practice, of granting leave to file a supplemental answer. There ought to have been an extremely clear and strong case made out, after what has passed in this cause, showing the mistake in the answer, and the new and material discoveries since. There is no such ground laid for the allowance of so delicate and dangerous an indulgence. The answer was filed many years after a journey to *Kentucky*, and when all the facts alleged by way of defence, might, with due diligence, have been sufficiently known.

I shall, accordingly, declare, that *inasmuch* as the answer was filed in *November*, 1810, and no specific or material mistake therein is shown or alleged; and *inasmuch* as by the defendant's affidavit of the 1st of *May*, 1811, he speaks of an application already then made for the examination of witnesses in *Kentucky*, and stated, that a commission was necessary to take proof, to show that the testator of the plaintiffs had no interest in the lands which they undertook to convey; and *inasmuch* as the rules for publication passed in *September*, 1818, and were voluntarily relinquished by the plaintiffs in *September*, 1819; and *inasmuch* as publication again passed on the 23d day of *November*, 1819, after the same had been enlarged for several weeks, at the instance of the defendant; and *inasmuch* as the plaintiffs have prosecuted this cause, since the filing of the bill, with forbearance and indulgence, and the defendant has been guilty of negligence, without excuse, in not filing a cross bill, and

in not suing out a commission during this long period of time, and to delay the cause further in its present state, for either of these objects would be unreasonable, and contrary to the rules and practice of the Court, and injurious to the credit of the administration of justice; therefore, the motion to set aside or stay proceedings, or to amend the answer, is denied, with costs; but the defendant may sue out a commission, on the usual terms, at his peril, and upon condition that the cause is not to be delayed thereby.